(Clermont County Common Pleas.)

MALINDA HETRICK v. GEORGE H. GREGG, SUSAN GREGG, and CHARLES H. GREGG.

---

(1). Declarations by the grantor in a deed of conveyance, made after the conveyance in the absence of the grantee, are not admissible evidence in derogation of the title conveyed in the deed, unless collusion or conspiracy between the parties, that the deed was executed for fraudulent purposes, is first shown.

(2). A conveyance of land, where the grantor has ample means left to satisfy all debts he has at the time of such conveyance, will not be set aside as fraudulent on the petition of a subsequent creditor, unless it is shown that such conveyance was made in contemplation of becoming a debtor of such subsequent creditor.

(3). If, however, the conveyance at the time was made with the intent to defraud the creditors of the grantor, a subsequent creditor may avail himself of this fraudulent character of the conveyance and have it set aside.

(4.) Delay in placing deed on record as batch of fraud.

---

The record, evidence and uncontested testimony offered herein by plaintiff shows:

January 14, 1888. A bastardy proceeding was begun against Geo. H. Gregg in case No. 8911, by Samantha J. Pribble, who was then twenty-five years old.

February 2, 1888. Plea of guilty in case No. 8911, judgment for $800, and same paid in full by Geo. H. Gregg. Journal D. 2nd, page 180.

February 24, 1888. Deed from Geo. H. to Chas. H. Gregg, executed conveying real estate in petition described.

February 25, 1888. Deed recorded in book 123, page 321.

March 19, 1888. Mrs. Hedrick receives money, about $2,000.00, from Louis Bonar's estate and deposits same in Felicity Bank.

April 12, 1888. Elizabeth Moyer, the mother of Samantha J. Pribble, sues Geo. H. Gregg for damages for loss of her daughter's services through seduction in case No. 8970, which case was afterwards settled for $50.00.

May 5, 1888. Geo. H. Gregg borrowed $1,000.00 from Mrs. Hedrick, with Chas. H. Gregg as surety, Charles then owning ninety-two acres of land in one track, eleven and one-half acres of land in another tract, and a warehouse in Felicity worth $500.00, and chattels, all worth $5,000.00 or more, and Charles then being single and out of debt except for the surety debt on this Hedrick note.

January 31, 1891. Charles H. Gregg deeded the land described in the petition to Susan Gregg, he still being single and still owning the 92 acres, the 11½ acres and the warehouse, and being out of debt except on the Hedrick note.

December 17 1891. Charles H. Gregg married.

March 21, 1892. Charles H. Gregg bought the 108 acres more land for $5,400.00, going in debt for two-thirds of the purchase money or more.

May 4, 1892. Hedrick note renewed for $1166.40 for one year. Signed by Geo. H. and Chas. H. Gregg.

April 26, 1895. Deed from Charles H. Gregg to Susan Gregg, recorded in deed book 136, page 190.

September 12, 1896. Charles H. Gregg makes an assignment for the benefit of creditors.

September 14, 1896. Malinda Hedrick sues on her note.

November 21, 1896. Judgment for $1,103.15 on Hedrick note.

January 15, 1897. Execution issued on Hedrick judgment and levied on land described in the petition.

January 20, 1897. Petition herein filed.

October 14, 1897. Amended petition herein filed.

---

MARKLEY, J.

At the trial of this case plaintiff to maintain the issue on her part offered certain testimony, to the admission of which the defendant, Susan Gregg, objected: and it was then agreed by coun-

sel that the court should hear all such testimony and pass upon its competency on the final disposition of the case.

The principal portions of the testimony objected to were the declarations of George H. Gregg, testified to by John Walker, Esq., Mr. Bollander, the plaintiff, and her son and daughter, and his statemets made before the probate court, as shown by the transcript offered in evidence.

Objections, also, were made to the declarations of Charles H. Gregg.

These declarations of George H. Gregg, alleged to have been made at different times, were all made after he had conveyed the land in dispute to his son, Charles H. Gregg, and in the absence of said Charles, and the defendant. Susan Gregg.

There was a total absence of positive proof to show collusion, or conspiracy among the defendants at the time of the conveyance from George H. Gregg to his son Charles, and the conveyance from Charles to his mother, Susan Gregg, or either of them, to defraud the plaintiff, or any other then existing or subsequent creditor; therefore, by well settled rules of law, these declarations of George H. Gregg could not be heard to impeach the title to the land granted by him. Webb, Adm'r, v. Roff et al., 9 Ohio St., 430-2; Ohio Coal Co. v. Davenport, 37 Ohio St., 194; Gay v. Gay, 26 Ohio St., 492; Voss v. Murry, 50 Ohio St., 19.

The declarations of Charles were also inadmissible, but mainly on the ground that he, being admittedly a trustee and having no beneficial interest in the property, could have been called as a witness by plaintiff. His declarations would be admissible only as those of a co-conspirator.

Had the plaintiff established a case by any competent evidence that these defendants had conspired to defraud plaintiff, or even Mrs. Moyer, there might be some reason for claiming the declarations to be admissible. When the conspiracy is once established, the acts and declarations of one conspirator may be given in evidence against all. This is the rule even in criminal cases. But how does this case stand? Has the plaintiff shown any collusion among the defendants to defraud her? Certainly not by any positive testimony. There was not any testimony offered tending to prove that George H. Gregg, at the time he deeded the land to his son, contemplated becoming the debtor of Mrs. Hedrick, or of any other person. But there was testimony offered, and properly admitted (30 O. S., 11), tending to prove that he was indebted to his wife, and that he had often promised to deed to her the land, and that the conveyance to Charles was in trust to him for Mrs. Gregg in satisfaction of that in-

debtedness. It is urged, however, that the suit of Mr. Moyer for damages for the seduction of her daughter was then threatened, and very shortly thereafter commenced, and the court is asked to infer from these facts that the conveyance was made in anticipation of a judgment in that case. The evidence tended strongly to show that the Pribble woman—Mrs. Moyer's daughter—was twenty-five years old at the time of the alleged wrong, and that she had long forsaken the maternal roof, and had been doing for herself. These facts must have been known to the parties and their attorneys, and the only surprising thing, under the circumstances, is the fact that Mrs. Moyer recovered anything at all. Certainly there was nothing in the case of such grave aspect as to justify the belief that Gregg conveyed the land to avoid any judgment that might be obtained therein. On the other hand he had just satisfied the judgment in the bastardy proceeding: he was indebted to his wife for money received years before, and, for which, he had promised to deed to her the land, (this is true unless Gregg deliberately perjured himself), and, therefore, was then under a moral, if not legal obligation to repay her. He was not then in debt to plaintiff, not to anyone else, as far as the testimony discloses. Mrs. Moyer's cause of action then existed—if she ever had any—which would become a debt after judgment. And, of course, if the only consideration for making the deed to Charles was to defeat the collection of Mrs. Moyer's claim, she could, after having obtained judgment, have set it aside: and being fraudulent in its inception, and fraudulent in fact, Mrs. Hedrick, though a subsequent creditor, could avail herself of its fraudulent character and have it set aside. Webb, Adm'r, v. Roff et al, 9 Ohio St.., 430; Crumbaugh v. Kugler, 2 Ohio St., 374; Bowlus v. Shanabarger. 19 C. C. 137.

But as has been stated there was nothing in Mrs. Moyer's claim to excite reasonable apprehension of danger. Besides, if the motive for making the conveyance had been to avoid paying her anything, why was not the land reconveyed to George in 1891, after the Moyer case was settled? At that time surely it would have been to the interest of Charles to have had it done. That he could have done it there can be no doubt. He still held the deed which he had prepared on January 31, 1891, to give to his mother. He did not deliver it until shortly before April 26, 1895, when it was recorded. Counsel for plaintiff in their brief urge this fact as the strongest, most suspicious circumstance indicating the fraudulent character of the whole transaction.

Admittedly Charles was a trustee.

All parties agree to that—the only contention being, who was the beneficiary, his father, or his mother? His action in preparing the deed in January, 1891, and not delivering it until 1895, seems strange, i⁷ not unaccountable. It is difficult to assign any reasonable motive therefor. It is true that plaintiff claims it was only a part of the scheme to defraud Mrs. Moyer and herself. Mrs. Moyer's claim was satisfied in July, 1891, and still Charles held the deed nearly four years thereafter before delivery. Now, what motive, if any, actuated him in doing so? What foundation is there for claiming that his motives, if he acted from motive, were fraudulent and corrupt? Because if he did not act from corrupt and fraudulent motives, it is immaterial why he held the deed so long.

A general view of the transaction sheds some light on this question.

Mrs. Hedrick testified that at the time George borrowed the $1,000.00 he told her that he owned the land in question, and that she loaned him the money on the faith of that statement. (This declaration of Gregg's, like the others, was not admissible.) Mrs. Hedrick may not have had actual notice of the conveyance to Charles at that time, but it would seem strange, indeed, living in the same locality, that she did not learn of it during the succeeding seven or eight years. She certainly must have heard of the conveyances during that time—at least there was no evidence offered that she did not.

The note was permitted to run over four years and was then renewed, Charles again signing the note. It is a significant fact that in both instances it is Charles alone who is financially responsible. He had substantially the same property when the note was renewed that he had when he first signed it, and he was likewise out of debt, and his real estate unencumbered, save by the marital rights of his wife, whom he had recently married. When the note was first signed, when renewed, when due in 1893, George was insolvent and Charles was solvent, being worth three or four times the debt over lawful exemptions. The deed from Charles to his mother was written and completely executed, except the mere delivery, in 1891. Yet, he did not deliver it until more than four years thereafter. Now, if Charles were trustee for his father, as claimed, you, then, have to impute to him the folly of surrendering the means of protecting himself against loss on the note, as well as dishonesty, in wrongfully conveying the property.

Had Charles delivered this deed at any time during the years 1891, 1892 or 1893, would it not have caused comment, or even aroused suspicion? The delivery and recording of the deed as late as April, 1895. did not have that effect. A judgment against Charles in 1895 would have been good. Why did not plaintiff act then? She deferred action for nearly one and one-half years after Charles conveyed to his mother, but commenced suit two days after the assignment.

The plaintiff has been unfortunate. She permitted the defendants, George and Charles, to retain her money for more than eight years, relying, doubtless, on the solvency of Charles. She permitted these several conveyances to be made without any inquiry as to the reasons therefor, and without making any effort to collect her claim. These considerations induce the belief that Mrs. Hedrick relied upon Charles for the payment of her note, having full faith and belief, no doubt, in his solvency and perfect integrity: and considerations of common honor and manhood should prompt these men to make unusual effort to repay this confiding old woman: But, however, that may be, the evidence does not warrant the court in granting the relief prayed for in the petition and cross-petition, and they, therefore, will be dismissed at the cost of the plaintiff.

The appeal bond is fixed in the sum of two hundred ($200.00) dollars.

An entry in accordance with the foregoing opinion may be placed upon the journal of the present term.

Frazier & Hicks, for Plaintiff.

Nichols & Nichols & W. W. Prather, for Defendants.

Since writing opinion in this case, attention has been called to the case of Jones v. Leeds, 7 Nisi Prius Reports, 480.

That case had been already read and considered. The difference between that case and this, renders that valueless as authority in this case. Jones was an existing creditor at the time of the conveyance, Mrs. Hedrick was not.

Markley, Judge.